IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WALTER BENNETT, JR., <br><br> Plaintiff, <br><br> v. <br><br> ADVANCED CABLE CONTRACTORS, INC., A GEORGIA CORPORATION, AND LISA ADCOX MEYER, <br><br> Defendants. | CIVIL ACTION FILE NO. <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff WALTER BENNETT, JR., through his counsel, STEPHEN M. KATZ, THE KATZ LAW GROUP, for his Complaint, and alleges:

## NATURE OF THIS ACTION

1.

This is an action brought to recover damages under 29 U.S.C. § 215(a)(3) of The Fair Labor Standards Act of 1938, ("FLSA").

## Parties

2.

Bennett, an individual, lives in the Northern District of Georgia.

3.

Defendant Advanced Cable Contractors, Inc. ("Advanced Cable") is a Georgia corporation with its principal office address at Post Office Box 90, Grovetown, Georgia 30813.  Advanced Cable can be served by delivering a copy of the Summons and the Complaint to Brian Bush, Advanced Cable's registered agent, at 462 Telfair Street, Augusta, Georgia 30901.

4.

Defendant Lisa Adcox Meyer ("Meyer") lives in the Northern District of Georgia and controls operations at Advanced Cable.  Meyer can be served by delivering a copy of the Summons and Complaint to her at 307 Joshua Lane, Martinez, Georgia 30907.

5.

Meyer is involved in the day-to-day operations and has substantial operational control over Advanced Cable, including, without limitation, the policies governing individuals employed in the same capacity as Bennett.

2

6.

Meyer, as the person who directs Advanced Cable's operations on a day-to-day basis, has and had the power to hire and fire individuals, including Bennett.

7.

Meyer, as the person who directs Advanced Cable's operations on a day-to-day basis, supervises and controls employee work schedules and the conditions of employment.

8.

Meyer, as the person who directs Advanced Cable's operations on a day-to-day basis, is responsible for determining the rate and method of payment for employees, including, without limitation, Bennett.

9.

Meyer, as the person who directs Advanced Cable's operations on a day-to-day basis, is the person responsible for maintaining employment records and provides directives on how Advanced Cables' employment records are maintained and handled.

10.

At all times relevant hereto, Advanced Cable has maintained offices in the State of Georgia, and transacted regular, not isolated, acts of business in the Atlanta, Georgia area.

11.

Defendants are individually and collectively engaged in commerce as defined under the FLSA at 29 U.S.C. § 203 (b).

12.

Defendants, individually and collectively, are an "enterprise engaged in commerce or in the production of goods for commerce" pursuant to the FLSA, 29 U.S.C. § 201 *et. seq.*

13.

At all relevant times, individually and collectively, Defendants have been and remain, an Employer within the meaning of §3(d) of the FLSA, 29 U.S.C. § 203(d), in that they acted ". . .directly or indirectly in the interest of an employer in relation to an employee. . ." and under 29 U.S.C. § 215(a)(3) in that Defendants employed Bennett.

14.

As an employer engaged in commerce, Defendants are subject to the

requirements of the FLSA, 29 U.S.C. § 201 *et. seq.*

15.

Defendants, and each of them, were at all relevant times aware of the existence and requirements of the Fair Labor Standards Act, including, without limitation, the duty to pay overtime compensation and the duty to refrain from retaliation against employees who complain about violations of the Fair Labor Standards Act.

## JURISDICTION

16.

Jurisdiction over this action is conferred on this Court by Section 216(b) of the FLSA, 29 U.S.C. § 216(b) as well as 28 U.S.C. § 1331.

## VENUE

17.

Venue is proper in the Northern District of Georgia in that the acts complained of took place in this judicial district.

## FACTS

18.

Bennett was employed by Defendants from February 2011 until his termination on March 2, 2012, and for much of the time he worked for Defendant he received piece-rate compensation without compensation for piece-rate work performed in excess of 40 hours in given work weeks.

19.

Bennett's primary and virtually only duties while working for Defendants are installing cable products for Defendants.

20.

In January 2012, Defendants changed Bennett's compensation from "piece rate," compensation; however, Bennett continued to work overtime without receiving overtime compensation due to him.

21.

At all times relevant to this action, Defendants refused to pay Bennett overtime compensation.

22.

While employed by Defendants as a "Cable Installer," Bennett consistently worked over 40 hours per week.

23.

Defendants deliberately failed to provide Bennett with overtime compensation for hours worked in excess of 40 hours in any given week in 2011 and 2012.

24.

On January 12, 2012, Bennett filed his Complaint in Civil Action No. 1:12-cv-115, N.D. Ga., seeking, *inter alia*, unpaid overtime from Defendant Advanced Cable.

25.

On January 17, 2012, Bennett filed his Amended Complaint in Civil Action No. 1:12-cv-115, N.D. Ga., which, *inter alia*, named Lisa Adcox Meyer as a Defendant.

26.

On Friday, February 25, 2012, at approximately midnight, Bennett received a phone call informing him that his brother had been in a serious accident in South Carolina. Upon receiving the news, Bennett immediately went to see his brother in the hospital in South Carolina to handle matters related to the hospitalization and his brother's affairs.

27.

7

Pursuant to Bennett's request, his wife, Amanda Rogers, called Bennett's supervisor, Greg Parker, to explain that Bennett had to go out of town for the emergency and fully explained the situation advising Parker that Bennett's brother was in the hospital from an accident.

28.

Parker told Bennett's wife that "everything was fine."

29.

Bennett's wife also informed Parker that she would give Parker daily updates regarding the situation and she so did for the next week.

30.

On multiple occasions, Bennett's wife left Parker voicemails after their initial discussion with updates regarding Bennett's status.

31.

On Wednesday, February 29, 2012, Lisa Meyer called Bennett's wife, and Bennett's wife explained to Meyer as she had to Parker that Bennett had to go out of town for the emergency with his brother and fully explained the situation advising Meyer that Walter Bennett's brother was in the hospital from an accident and Bennett was with his brother in the hospital.

32.

Bennett's wife also asked Meyer whether Defendants needed to pick up Bennett's truck before he returned to work and advised Meyer that the truck was locked and fully secured in their driveway.

33.

Meyer told Bennett's wife, "everything is okay" and not to worry about the truck.

34.

On Friday, March 2, 2012, Bennett's wife found out from Bennett's sister that Defendants had left a letter at Bennett's sister's house advising Bennett that he was terminated.

35.

At approximately 2:15 p.m., March 2, 2012, Defendants, through their counsel, advised Severin Roberts, an attorney who represents Bennett that:

a. Bennett had not checked into work in a week and his wife had called in for him at some point in the last week. Defendants further stated that they were unable to reach Bennett or his wife and did not know his whereabouts and further that Defendants, due to Bennett's absence from work, went to drop off a termination letter and collect the company vehicle assigned to him.

9

b.  Defendants, through their counsel, stated Defendants wanted to call the police and report the truck stolen. Defendants, through their counsel, stated that Defendants were not sure how long they would wait before calling the police about the "missing" vehicle.

36.

Defendants knew the statements made by them were false and were specifically intended to intimidate, harass and retaliate against Bennett due to his protected activity under the FLSA. Defendants deliberately communicated the false statements through their counsel in an attempt to conceal their retaliatory conduct.

## CLAIM FOR RELIEF

## VIOLATION OF 29 U.S.C. § 215(a)(3)

## (FLSA Retaliation)

37.

Bennett repeats and realleges each and every paragraph set forth in paragraphs 1 to 36 as if fully set forth at length herein.

38.

Section 215(a)(3) makes it unlawful for *any person . . .* to discharge or in any other manner discriminate against any employee because such employee has filed

10

any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee. . ."

39.

The FLSA's definition of the word person includes "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."

40.

Defendant Advanced Cable is a "person" under the FLSA and is therefore prohibited from discharging or in any other manner discriminating against any employee, including Bennett, because the employee has filed any complaint or instituted or cased to be instituted any proceeding under or related to the FLSA or has testified or is about to testify in any such proceeding.

41.

Defendant Meyer is a "person" under the FLSA and is therefore prohibited from discharging or in any other manner discriminating against any employee, including Bennett, because the employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA or has

11

testified or is about to testify in any such proceeding.

42.

Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 15(a)(3) of this Act [29 USCS § 215(a)(3)] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3) [29 USCS § 215(a)(3)], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.

43.

At all relevant times, Advanced Cable has been and remains an Employer within the meaning of §3(d) of the FLSA, 29 U.S.C. § 203(d), in that it acted ". . .directly or indirectly in the interest of an employer in relation to an employee. . ."

44.

At all relevant times, Meyer has been and remains, an Employer within the meaning of §3(d) of the FLSA, 29 U.S.C. § 203(d), in that she acted ". . .directly or indirectly in the interest of an employer in relation to an employee. . ."

45.

At all relevant times, individually and collectively, Defendants have been and remain, an Employer within the meaning of §3(d) of the FLSA, 29 U.S.C. § 203(d), in that they acted ". . .directly or indirectly in the interest of an employer in relation to an employee. . ." and under 29 U.S.C. § 215(a)(3) in that Defendants employed Bennett and other similarly situated individuals.

46.

Bennett engaged in statutorily protected conduct under the FLSA by (i) opposing an employment practice he reasonably believed was unlawful under the FLSA, i.e. demanding overtime compensation due, owing and unpaid by defendants, (ii) filing and participating in a collective action overtime case under the FLSA to recover overtime compensation on behalf of himself and other similarly situated employees.

47.

Bennett suffered an adverse employment action as a result of his statutorily protected conduct, *to wit*: he was terminated from his position with Defendants.

48.

Bennett's termination from his job was not "wholly unrelated" and was, in fact, directly related to his filing and participating in a collective action overtime case under the FLSA to recover unpaid overtime compensation and for Bennett's opposition to what he reasonably believed was an unlawful employment practice by Defendants.

49.

Bennett's statutorily protected conduct was the motivating factor in the Defendants' decision to terminate his employment.

50.

As a direct and proximate result of the retaliation, Bennett has sustained financial losses, including, without limitation, lost wages and benefits for which he is entitled to recover from Defendants jointly and severally.

48.

As a direct and proximate result of the retaliation by Defendants, Bennett has sustained mental anguish, for which he is entitled to recover Defendants

14

jointly and severally.

49.

The conduct engaged in by Defendants was intentional, humiliating, and showed willful misconduct, malice, wantonness, oppression, and that entire want of care which would raise the presumption that the Defendants specifically intended to harm Bennett. Bennett is therefore entitled to an award of punitive damages against the Defendants jointly and severally under 29 U.S.C. §§ 215(a)(3) and 216(b) in order to punish Defendants and deter them from repeating such wrongful acts.

**WHEREFORE**, Plaintiffs demand relief as follows:

1.    That process issue and that Defendants be served according to law;

2.    An Order finding that Defendants violated Sections 215(a)(3) and 216(b) of the Act and directing Defendants to reinstate Bennett to the position he formerly held with Defendants or, alternatively, "front pay" in an amount to be determined by the Court;

3.    Judgment in favor of Bennett and against Defendants, jointly and severally, for compensatory damages, lost wages and benefits;

4.    Judgment in favor of Bennett and against Defendants, jointly and

15

severally, for punitive damages;

5.      Pursuant to § 216(b) of the Act, judgment in favor of Bennett and against Defendants, jointly and severally, for reasonable attorneys fees;

7.      Judgment in favor of Bennett and against the Defendants, jointly and severally, for prejudgment interest;

8.      Judgment in favor of Bennett against the Defendants, jointly and severally, for all taxable and non-taxable costs;

9.      Pursuant to the Seventh Amendment to the United States Constitution and Rule 38, F.R.Civ.P., Bennett demands **TRIAL BY JURY on** all claims, matters and issues that can be tried to a jury;

10.     Such other, further and different relief as this Court deems appropriate.

This 24th day of April, 2012.

Respectfully submitted,

By:  /s/Stephen M. Katz
Stephen M. Katz
Ga. Bar No. 409065